No. 36.—DANIEL HIGDON *et al.*, plaintiffs in error *vs.* STE-PHEN T. HEARD, defendant.

[1.] The looser at gaming cannot file a bill in his own right, under the Act of 1764, to have the property lost settled upon his wife and children; but a bill brought by him for that purpose, may be amended, by making him next friend and guardian, and the cause proceed.

[2.] The proper remedy under that Statute, is a bill in equity.

[3.] At Common Law, and in Chancery, no person can be compelled to testify against himself. In equity, he is not compelled to answer to any question which has a tendency to criminate him, or expose him to a penalty or forfeiture; or any question which may form a link in the chain of evidence by which crime, penalty or forfeiture is to be established.

[4.] His privilege in this regard, cannot be waived and may be set up by demurrer, plea, or in his answer. A demurrer on this ground, does not go to the jurisdiction; but complainant has the right to proceed and make out his case by other testimony.

[5.] These privileges do not extend to cases under the Statute of Ann, as regards property and securities won at gaming; nor to cases under our Act of 1764, upon the same subjects—those acts, by express enactment, requiring the defendant to answer.

[6.] Our Act of 1764 is not in conflict with the Federal Constitution; because the defendant's answer, in cases originating under it, cannot be read in evidence against him, in any criminal proceeding whatever.

In Equity, in Macon Superior Court. Decided by Judge POWERS, March Term, 1853.

This was a bill filed by Stephen T. Heard, setting forth,

Daniel Higdon *et al.* *vs.* Stephen T. Heard.

that in October, 1852, the defendants, Higdon and another, had met the complainant in the City of Oglethorpe, had induced him, while intoxicated, to play with them at cards; and had won from him a considerable amount in money and notes, and a lot of land in Oglethorpe, to which they had procured him to sign a deed of conveyance to them; and also induced him, in payment of his losses to them at cards, to assign to them a bond for titles, which he held to another lot in said city, a great part of the purchase money of which, he had previously paid. The bill prayed for a discovery of the facts; and that defendants be decreed to refund what they had won from complainant, and to deliver up said deed and bond for titles; and that the property be settled on the wife and children of complainant, in terms of the Statute.

To this bill, the defendants demurred, on the following grounds, to wit:

1st. That complainant had not made such a case as entitled him to a discovery or to relief.

2d. Because he had an adequate remedy at Common Law.

3d. Because the bill should have been brought in the name of the wife and children of complainant, and not in his own.

4th. Because the laws of this State, compelling a discovery of gaming transactions, are unconstitutional; because, such transactions are criminal, and the said Acts do not grant an absolute and unconditional release from punishment.

5th. Because the defendants could not make the discovery sought, without criminating themselves, and incurring penalties.

The demurrer was overruled by the Court; to which defendants excepted.

MILLER & HALL, for plaintiffs in error.

STUBBS & HILL, for defendants.

*By the Court.*—NISBET, J. delivering the opinion.

[1.] The Statute under which this bill was filed, declares that mortgages, securities, or other conveyances of lands, ten-

ements and hereditaments, executed on account of money lost at gaming, " Shall inure and be to and for the sole use and benefit of, and shall devolve upon, such person or persons as should or might have, or be entitled to such lands, tenements and hereditaments, in case the grantor or grantees thereof, or the person or persons so encumbering the same, had been naturally dead; and as if such mortgages, securities, or other conveyances, had been made to such person or persons so to be entitled, after the decease of the person or persons so encumbering the same." (*Cobb's N. D.* 726.) It is brought by the husband and father of the family, who are entitled to the property lost—he being the loser at cards; and the prayer is, that it be settled upon his wife and children, who would be his heirs if he were naturally dead. The demurrer claims, and rightfully, that he has no right in Equity or at Law, to the money lost, the conveyances and incumbrances, or any interest whatever in the same; and therefore no right to sue. This is all true. We think, however, that the bill is amendable as to the character of the complainant, so as to make it a bill brought by the wife and children, by their next friend and guardian, the present plaintiff; and direct that it be so amended. Chancery can then proceed to decree such a settlement on them, as it may deem wise and just, in accordance with the prayer of the bill.

[2.] As to their remedy, they have none that is adequate at Law. But this point is set at rest by the Statute, which requires the winners to answer to a bill filed to discover the money or other things won; and thus indicates the remedy. Were the Act silent as to the remedy, it would be easy to show that its objects can only be carried out in a Court of Equity.

[3.] With confidence and ability, the counsel for the plaintiffs in error, claims that the bill must be dismissed on demurrer; because, both by the Law of Chancery in Great Britain, and by the Constitution of the United States, they cannot be compelled to answer. If they were protected from a compulsory answer, the bill would not be dismissed. The protection extends to the charges in the bill, which relate to the facts and

circumstances of the gaming. Without discovery as to these, the complainants would have the right of proceeding with their cause, and of proving their case by other evidence.

[4.] When sustainable, the demurrer, in these cases, does not go to the jurisdiction of the Court; but alone to the charges, which, if answered, would subject the defendant to a penalty or forfeiture—or tend to subject him to a prosecution. But neither by the Constitution, nor by the practice in Chancery, are the defendants protected in this case. A defendant cannot be obliged to discover what may subject him to a penalty or forfeiture, or criminal accusation. The doctrine is well settled in England and America, that no man is bound to accuse himself of any crime; or to furnish any evidence to convict himself of any crime. The maxim of the Common Law, is *nemo tenetur seipsum prodere*. The Courts of Chancery have adopted it; and it is now fully conceded in that jurisdiction, that no person shall be obliged to discover what may even tend to subject him to a penalty or punishment; or to that which is in the nature of a penalty or punishment. The protection thus accorded to the citizen, is not limited to cases where the question or answer has a direct tendency to criminate him, or to expose him to a penalty or forfeiture; but he is protected from answering any question which may form a link in the chain, by which such cases are to be established. The privilege may be asserted by demurrer, or by plea, or it may be set up in the answer. (*Story's Eq. Plea.* §§ 575,-6,-7,-8, 525. *Mitford's Eq. Pl. by Jeremy*, 195, 286. *Cooper's Eq. Pl.* 204, 206, 207. *Story's Eq. Jurisp.* § 14, 94. *Beames Eq. Pl.* 258 to 271. 2 *Atk.* 393. 9 *Paige R.* 580. 10 *Ibid.* 210. 1 *Atk. R.* 539. *Parker's R.* 159. 1 *Young's R.* 308, 317. 16 *Vesey R.* 242. 11 *Ibid.* 525. 1 *Ibid*, 246. 5 *Beavan* 381.) The defendant cannot even waive this protection, for the law is, in this regard, his guardian. (*Lee vs. Read*, 5 *Beavan*, 381, 385. The doctrine has been recognized by this Court, in *Marshall vs. Riley*. (7 *Ga. R.* 367.)

[5.] An exception to these rules in Chancery, in England, is found in cases originating under the Statute of Ann, against

gaming; because, by the Statute, the defendant is required to answer. It, therefore, to the extent of the cases contemplated therein, repeals the settled Law of Chancery.

Our Statute of 1764, is a substantial copy of the Statute of Ann, and contains a like requirement, that the defendant shall answer; and it therefore repeals the general Law of Chancery, so far as this case, and all others originating under it, are concerned.

[6.] Nor is this Act in conflict with the Constitution. That declares that no person shall be compelled, in any criminal case, to be a witness against himself. Literally, the Constitution does not go as far as the Common Law; but its spirit and intent covers the whole ground. By it, all persons are protected from furnishing evidence against themselves which may tend to subject them to a criminal prosecution. And they get that protection thus. Answers filed, in cases originating under the Act of 1764, cannot be read in evidence against them, in any criminal case whatever. They are excluded by the Constitution.

Let the judgment below be affirmed.